## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KELLY ANDERSON,           )
                               )
         Plaintiff,    )
                               )
vs.                        )     Case No. <u>09-CV-2526</u> KHV/DJW
                               )
UNITED PARCEL SERVICE, INC.,   )     **JURY TRIAL DEMANDED**
                               )
         Defendant.    )

### PLAINTIFF'S COMPLAINT

**COMES NOW** Plaintiff Ms. Kelly Anderson ("Plaintiff" or "Ms. Anderson"), by and through the undersigned counsel, and for her complaint against Defendant United Parcel Service, Inc. ("Defendant," "UPS," or "the Company") states and alleges as follows:

### NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1.      Plaintiff, Ms. Kelly Anderson, brings this action against Defendant, United Parcel Service, Inc., for discrimination and other unlawful conduct in employment, as a result of Defendant: (a) requiring Ms. Anderson, pursuant to a *de facto* corporate-wide policy, pattern and practice, to provide a "full" or "100%" medical release, without restrictions, before permitting her to return to work full-time following a medical leave of absence; (b) failing and/or refusing to engage in the required interactive process, and/or refusing to engage in the interactive process in good faith, with Ms. Anderson to identify reasonable accommodations for Ms. Anderson upon her attempt to return to work following an absence due to medical treatment or a medical condition, as required under the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*. ("ADA"); (c) failing and refusing to reinstate Ms. Anderson, an otherwise qualified disabled employee, in a position that will effectively accommodate her medical restrictions and related impairments without imposing an undue hardship on UPS; and,

(d) engaging in various forms of related unlawful retaliation, interference, harassment, intimidation, and coercion, including, but, not limited to, failing and refusing to permit Ms. Anderson and interfering with her attempts to return to work in response to her having exercised her rights to seek workers compensation and the protections of the ADA and related law.

2.      Defendant is a federal contractor doing business with the United States government.  By virtue of this status, UPS is required to comply with the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 *et seq*. (the "Rehab Act"), to correct unlawful employment practices on the basis of disability, including the statutory mandate to provide reasonable accommodations to individuals with disabilities.  At all times relevant to the factual claims which form the basis for this suit, Defendant has been subject to the requirements of the Rehab Act.  The Rehab Act requires Defendant to engage in an interactive process with its employees to identify and agree upon either: 1) a reasonable accommodation to allow the employee to return to productive employment while performing the essential functions of his or her former job; or, 2) another vacant position.  The Company's policy requires it to violate its duty to persons seeking accommodations which is to engage in the interactive process required under the ADA and the Rehab Act.  UPS is required by law to engage in the interactive process in order to identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations.

3.      The Company does not have a practice of providing employees absent from work due to an injury with other work as a required accommodation; at most, on a case by case basis, UPS provides temporary light duty work only to those individuals who have an estimated return to full duty date within thirty (30) days.  UPS's policy denies effective accommodations, both to individuals whose disabilities are chronic or long-term, as well as to those individuals whose

impairments UPS perceives as likely to be chronic or long-term. When the Company has information sufficient to put it on notice that the employee might have a long-term or chronic disability, by policy, it does not engage in the required interactive process. Instead, UPS uniformly asks the employee to have a physician complete a written report and to have the doctor submit the completed form directly to UPS. Next, UPS employees review the form, and on the basis of the content of the form, UPS makes a decision as to whether it believes the individual requesting the accommodation is a "qualified individual with a disability" as a matter of law, without ever questioning the meaning of the content of the form, and without any communication directly with the individual on whose behalf the accommodation request was made.

4.      The only actions UPS takes when it receives notice that an individual may have a disability and has requested, or is apparently in need of, an accommodation, is to send the individual a form for a doctor to fill out and return, and then to send back a form letter to the individual stating that the request is denied. UPS knows that Plaintiff, Ms. Anderson, has a disability, a history or record of being disabled under the ADA and/or Rehab Act, and/or regards or perceives Ms. Anderson as being disabled. The interactive process requires UPS to seek information directly from the employee, such as Ms. Anderson, regarding her or his relevant education, skills, abilities, and limitations or restrictions, and whether the individual's major life activities are substantially impaired by the disability. UPS has failed to do so. The Company's actions and failures and refusals to act are in violation of the Rehab Act's prohibition against disability discrimination and Defendant's affirmative obligation to accommodate the known disabilities of Ms. Anderson and others like her.

5.      Plaintiff further alleges that defendant is liable under the ADA, which: 1) prohibits discrimination against any qualified individual with a disability by an employer, *inter alia*, because of the individual's disability, record of disability, or perceived disability; 2) requires the employer to provide reasonable accommodations including reassignment to vacant positions, unless doing so would impose an undue hardship on the business; and, 3) prohibits retaliation, interference, coercion, intimidation, and harassment against any individual who has engaged in protected activity under the statute.

6.      Defendant has a codified practice for processing requests for accommodation in order to return to work, which when applied as written, constitutes a *per se* violation of the Defendant's duty to engage with the employee, such as Ms. Anderson, in the good faith interactive process to identify reasonable accommodations under the ADA.

7.      UPS does not engage in the interactive process in good faith.  Defendant's written policy, the "ADA Compliance Program" (the "Program"), provides a multi-step process which managers are directed to apply to individuals who seek to return to work following an injury or medical leave.  Under the Program, after an employee notifies the Company that he or she has a physical or mental impairment and requests an accommodation, the Company's medical officer (usually a nurse) first gathers medical information from the employee's doctor on a form provided by the Company.  The Defendant then makes a legal judgment as to whether the person making the request is a "qualified individual with a disability" under the ADA.  Only when UPS decides that the person has a legally "qualifying disability," will the Company even superficially engage in the interactive process to determine whether an accommodation is "warranted or feasible."

4

8.      UPS's job descriptions uniformly falsely represent that the ability to lift seventy (70) pounds is an essential function of nearly every bargaining unit job.  The Company's job descriptions for bargaining unit positions are designed and intended to further the discriminatory practices of UPS by including as "essential duties" of these positions activities which UPS knows in practice are rarely, if ever, required to be performed by any single individual without assistance and which are not "essential functions" as defined under law.

9.      The Company also has a policy or practice of refusing to reinstate individuals, regardless of their present disability status (i.e., whether the person is or ever was a qualified individual with a disability under the law and/or whether the person requests or requires any accommodation), in retaliation for exercising their rights under the ADA, as well as state workers' compensation law.

10.     Defendant has not only refused to reassign or even consider reassigning Ms. Anderson to a vacant funded position as an accommodation or otherwise, but also told her she cannot return to work as result of her injury and the filing of her related workers compensation claim; and, furthermore, Defendant has interfered with, retaliated against, and engaged in other types of unlawful harassment and intimidation in connection with Ms. Anderson's accommodation requests and related workers' compensation claim.

11.     UPS is one of the largest private employers in the United States with revenues in excess of $50 billion for its last fiscal year; it is also one of the world's largest private mail carriers with over 400,000 employees.  When a UPS employee, such as Plaintiff, attempts to return to work following an accident or a medical leave of absence and notifies the Company of such intention, UPS requires as a routine policy and practice that such employee obtain a full 100% medical release prior to any reinstatement with the Company.  UPS does in fact have

positions available within the Company which could accommodate Ms. Anderson and others like her.  In the absence of the submission of a full medical release, medically restricted employees may be allowed to temporarily work in the Company's "light-duty" ("TAW") program, which is less physically challenging and may comport with their restrictions and capabilities.  However, the TAW program is only rehabilitative in nature and, in fact, injured and medically restricted employees who have a limited prospect of full recovery (i.e., those whose restrictions are expected to persist for more than thirty (30) days) are ineligible to participate in the TAW program.

12.     UPS not only denies permanently disabled employees engagement in the interactive process to determine a reasonable accommodation for them as mandated under the ADA, but, as a *de facto* policy, pattern and practice, denies permanently disabled and/or permanently restricted employees access to other less physically demanding work on a permanent basis within the Company.  This policy, pattern and practice of non-interaction, bad faith, non-accommodation and retaliation and interference by UPS on the basis of disability status constitutes a *per se* violation of the ADA.  UPS arbitrarily and unilaterally denominates such permanently disabled employees who attempt to return to work from medical leave without a full medical release as "inactive" employees, as a pretext for violating their rights, and routinely refuses to engage them in the interactive process and denies them reasonable accommodations in violation of the ADA.

13.     Kansas law prohibits employers from interfering with and/or retaliating against their employees who exercise their lawful workers' compensation rights - recognizing such to be in clear contravention of public policy; and, as an exception to the at-will employment doctrine, an employee so discriminated or retaliated against may bring suit against their employer.

14.     Plaintiff alleges that she filed a claim for workers compensation benefits after sustaining an injury arising out of and during the course of her work with UPS; UPS had knowledge of this injury and Ms. Anderson's related claim; UPS constructively or effectively, if not outright, terminated Ms. Anderson's employment; and, there is a causal connection between the protected activity or injury and the termination.

15.     Defendant's related conduct is prohibited by Kansas law and constitutes wrongful/retaliatory discharge; and, furthermore, the manner and fashion in which UPS terminated Ms. Anderson's employment is part of a policy, pattern and practice demonstrating malice and reckless indifference towards Ms. Anderson and others like her or similarly situated with regard to their asserting their related rights.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the federal question subject matter of this civil rights action, pursuant to 28 U.S.C. §§ 1331 and 1343.

17.     This Court has pendent or supplemental jurisdiction over the state law claim raised herein, pursuant to 28 U.S.C. § 1367.

18.     This Court has jurisdiction over all the claims herein, pursuant to 28 U.S.C. § 1332 (a).

19.     This Court has personal jurisdiction over Defendant because the Company systematically and continuously engages in substantial interstate commercial conduct and business activity in Kansas, and the case arises out of UPS's unlawful conduct within this State.

20.     Plaintiff has complied with all conditions precedent to filing suit under the ADA. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), on or about January 5, 2009.  Later, Plaintiff filed a second charge of discrimination

with the EEOC on August 10, 2009, alleging unlawful conduct in addition to that in her earlier charge and, also, covered by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA").  Plaintiff received a notice of right to sue from the EEOC in connection with her first charge on or about July 15, 2009, and which was dated July 13, 2009.  Plaintiff has also received a right to sue notice in connection with her second EEOC charge on September 25, 2009, and which was dated September 24, 2009.  This complaint is filed within 90 days of receipt, as well as the date, of both right to sue notices.

21.     Venue is proper in the United States District Court for the District of Kansas pursuant to 28 U.S.C. §§ 1391(b) and (c).  The unlawful employment practices set forth herein occurred and continue to occur in and around Parsons, Labette County, Kansas, where Plaintiff resides, where Plaintiff worked, where the discrimination and the damages occurred, and where the unlawful employment policies and practices remain in effect in continuous, systemic violation of said statutes and law.

## PARTIES

22.     Plaintiff, Ms. Kelly Anderson, is a 50 (fifty) year old female and a citizen and resident of Parsons, Labette County, Kansas.  Plaintiff was hired by UPS in or around March of 1981, and, up to and until the time of the unlawful acts, conduct, and practices at issue, was continuously employed by the Company at its Parsons, Kansas facility.

23.     Defendant, UPS, is a Delaware corporation, having corporate headquarters located at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328.  UPS is the world's largest private mail carrier with hundreds of thousands of employees worldwide and is one of the largest private employers in the United States.  Defendant generated revenues in excess of $50 billion for 2008. At all relevant times, UPS has continuously been an employer, a person, and a covered entity

within the meaning of the ADA and the Rehab Act and subject to the laws, rules, and regulations at issue herein.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

24.     Ms. Anderson was a loyal and productive employee of UPS for approximately 25 years - a quarter of a century.  Her last position with UPS was that of a full-time package car deliver driver.

25.     Plaintiff sustained a workplace injury in or around February of 2006, during the course of and arising out of her duties and while employed as a full time package delivery driver.

26.     In connection with this injury, Ms. Anderson properly filed an injury report; however, thereafter, she continued to work full-time for UPS.

27.     While employed at UPS, Ms. Anderson had suffered other work related injuries which allowed for and required her to take time off from work.

28.     At the time of the unlawful conduct at issue herein, UPS was fully aware that Ms. Anderson had sustained previous work related injuries, taken time off from work in connection with such, and required related medical care and treatment.

29.     In or around November of 2006, Ms. Anderson sustained another shoulder injury in the course of and arising out her work and duties for UPS.

30.     However, in response to such, Ms. Anderson's manager, Mr. R. L. Riddle, told Ms. Anderson she did not need to report this injury because she had already filed an injury report earlier that year in connection with her previous injury to the same shoulder.

31.     Further, Mr. Riddle went on to slanderously accuse Ms. Anderson of falsifying this recent injury and claimed she was just upset with the amount of hours she was

working; in response to such, Ms. Anderson said if Mr. Riddle did not believe her injury

report, send her to a doctor.

32.     Pursuant to the Company's instructions, Ms. Anderson then went to visit a Dr.

Sharma; Ms. Anderson's injury was diagnosed as a torn right rotator cuff.

33.      Shortly thereafter, Ms. Anderson was allowed to briefly return to work at

UPS performing light duty work ("TAW" or "temporary alternate work").

34.     Then, in connection with her shoulder injury, Ms. Anderson had surgery in or

around January, 2007.

35.     Later that year, on or about October 1, 2007, Dr. Lowry Jones, a physician

approved by UPS and its workers' compensation insurer, Liberty Mutual, claimed Ms.

Anderson had reached MMI and placed permanent physical restrictions on Ms. Anderson.

36.     Thereafter, by letter dated March 13, 2008, in perfunctory, unsubstantiated,

and unlawful fashion, yet, entirely consistent with its related corporate policy, UPS notified

Ms. Anderson it did not believe her condition or impairments entitled her to a reasonable

accommodation; thus, UPS has refused to allow Ms. Anderson to return to work full time and

she has received no pay or benefits since.

37.     As a result of her work-related shoulder injury and related impairments, Ms.

Anderson is substantially limited in engaging in or performing a number of major life

activities, including: certain manual tasks, sleeping, walking, standing, lifting, bending,

concentrating, and working.

38.     Ms. Anderson is otherwise qualified for and could and can perform her last

job and/or other jobs at UPS with or without a reasonable accommodation.

39.     A reasonable accommodation, including providing power steering for the vehicle which she would use, utilization of lifting assistance devices which are already required, and/or other simple measures, can and could be provided for Ms. Anderson in the last position she held with UPS; further, UPS has failed altogether to consider whether or not Ms. Anderson might be able to return to work full-time in another position at UPS.

40.     Defendant UPS is well aware that Ms. Anderson has a disability, a history or record of suffering from a disability, and regards or perceives Ms. Anderson as being disabled, and that her last and earlier work related injuries are directly related to and arise from such.

41.     UPS, its workers' compensation insurer, Liberty Mutual, and its and their doctors have told Ms. Anderson that because of her impairments and the restrictions which have been placed on her there is no position she can work at with UPS and, also, do not believe she can return to work full-time in comparable positions with other employers.

42.     Since first receiving a limited medical release from a UPS-selected physician, stating that she could return to work performing other jobs within the Company that were consistent with her permanent physical restrictions, as well as after permanent restrictions had been placed on her by a UPS approved physician, Ms. Anderson has repeatedly and continuously requested that she be permitted to return to work, with or without an accommodation.

43.     Most recently, Ms. Anderson notified UPS by letter dated January 20, 2009, that she had a disability, she was seeking an accommodation in connection with her related impairments, and requested that UPS properly evaluate her physical condition and related

11

impairments and make a lawful determination consistent with applicable law as to whether or not a reasonable accommodation could be provided for her.

44.     However, pursuant to its related unlawful corporate policy, UPS refused to properly consider Ms. Anderson's actual physical condition and impairments and whether a reasonable accommodation could be provided for her.

45.     UPS informed Ms. Anderson by letter dated June 23, 2009, it did not feel she had a disability and, therefore, UPS was not required to and would not determine whether a reasonable accommodation could be provided for her.

46.     As a result, although Ms. Anderson is and was among the most-senior and tenured of all full-time UPS employees at the facility she worked at and has consistently demonstrated above-average productivity in her work, and she has presented UPS with medical and other evidence demonstrating she has a disability, an accommodation could be provided for her, and has been willing to propose such to UPS, Defendant has failed and refused to permit her to return to work - in any capacity.

47.     Since Ms. Anderson sustaining her related injury and with her attempts to return to work and seek a reasonable accommodation, Defendant has engaged in a deliberate, concerted, and ongoing effort specifically designed to force Ms. Anderson to resign (part of a policy, pattern and practice engaged in by UPS in an attempt to avoid the appearance of unlawfully terminating employees in this situation) and engaged in variety of flagrant and subtle forms of unlawful discrimination, retaliation, interference, and harassment, including, but not limited to, certain of that described herein.

48.     UPS has publicly retaliated against, intimidated, and humiliated Ms. Anderson before her colleagues and others by posting a notice with her picture at the facility where she

worked identifying her as an individual who had sustained a workplace injury and "needs your help."

49.     UPS forced Ms. Anderson to engage in humiliating and demeaning "TAW" in an overtly discriminatory and retaliatory fashion.

50.     UPS refused to communicate with Ms. Anderson with respect to her attempts to return to work and in other related situations.

51.     UPS refused to provide Ms. Anderson with paperwork from UPS which the Company claimed was necessary for Ms. Anderson to complete before it would consider her request for an accommodation.

52.     UPS has repeatedly and deliberately obstructed and delayed Ms. Anderson's related workers' compensation proceedings and refused to provide her with related care and treatment.

53.     UPS has on more than one occasion attempted to force Ms. Anderson into settling her related workers' compensation claim and proceedings conditioned upon her resigning and providing the Company with a "global" waiver and release.

54.     UPS has instructed its and its workers' compensation insurer's approved doctors Ms. Anderson has been forced to see to inform her that she could not return to work at UPS with any type of restriction.

55.     UPS has attempted to force and coerce Ms. Anderson to obtain a release from a physician which, inconsistent with and contrary to her impairments and physical condition, would state she had no restrictions.

56.     UPS has conditioned Ms. Anderson's return to work upon her having no restrictions.

57.     UPS has refused to engage in the required interactive process and/or to do so in good faith with Ms. Anderson in response to her repeated requests for an accommodation; thereby, Defendant has refused to properly consider the actual nature and extent of Ms. Anderson's disability and related impairments and whether or not a reasonable accommodation is available and/or could be provided to her.

58.     Recently, Defendant has falsely accused Ms. Anderson of stealing shipping supplies from UPS and conducted a related investigation into such which has caused her further anxiety and stress and additional embarrassment and humiliation with her former colleagues and others.

59.     This and other conduct Ms. Anderson has been and is being subjected to is prohibited by the ADA, the Rehab Act, and Kansas law and constitutes unlawful discrimination, retaliation, interference, coercion, and intimidation, as well as unlawful workers' compensation retaliation in violation of public policy.

60.     UPS is fully aware the discriminatory and retaliatory acts, conduct, and practices Ms. Anderson has been subjected to are unlawful.  The unlawful manner and fashion in which Ms. Anderson has been and is being treated by UPS is deliberate, intentional, and outrageous, carried out willfully, wantonly, and maliciously, ongoing and continuing in nature, and is part of an unlawful UPS corporate-wide policy, pattern, and practice demonstrating malice and reckless indifference towards Ms. Anderson and others like her and/or similarly situated and warrants an award of punitive damages in a reasonable sum to be determined by a jury.

61.     Those purported reasons Defendant has ostensibly asserted for its unlawful treatment of Ms. Anderson are untrue, inconsistent, contradictory, not believable, and wholly pretextual.

62.     The claims and allegations made herein are based on law, rules, and regulations concerning rights and protections independent of any labor law, collective bargaining agreement, and/or any related grievance mechanisms or procedures.

63.     In addition to being unlawfully subjected to and forced to endure great anxiety and emotional distress, among other things, as a direct result of Defendant's unlawful acts, conduct, and practices set forth in part herein, Ms. Anderson has been unlawfully refused the ability to return to work, in any capacity; and, as such, she has been unlawfully denied substantial past and future pay and related benefits and made to suffer a variety of other attendant damages.

### FIRST CLAIM:

### Prohibited Discrimination in Violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq.*

64.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.     Ms. Anderson is a disabled person as defined by the ADA.

66.     Ms. Anderson is qualified, with or without reasonable accommodation, to perform the essential functions her last job and other jobs at UPS.

67.     Defendant discriminated against Ms. Anderson because of her disability.

68.     As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees,

plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## SECOND CLAIM:

### Prohibited Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203 (a)

69.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

70.     Ms. Anderson engaged in protected activity under the ADA.

71.     Ms. Anderson suffered an adverse employment action.

72.     There is a causal connection between Ms. Anderson's protected activity and the adverse employment action.

73.     As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees, plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## THIRD CLAIM:

### Prohibited Interference, Coercion, and Intimidation in Violation of ADA, as amended, 42 U.S.C. § 12203 (b)

74.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

75.     Ms. Anderson engaged in protected activity under the ADA.

76.     UPS interfered with, coerced, threatened, or intimidated Ms. Anderson.

77.     There is a causal connection between Ms. Anderson's protected activity and UPS interfering with, coercing, threatening, or intimidating Ms. Anderson.

78.     As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees, plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## FOURTH CLAIM

### Wrongful/Retaliatory Discharge
### (Unlawful Workers' Compensation Retaliation
### in Violation of Kansas Law and Public Policy)

79.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

80.     Plaintiff sustained a work related injury arising out of and during the course of her employment for UPS for which she could and did file a claim for workers' compensation benefits.

81.     UPS has knowledge of Ms. Anderson's related injury and her related workers' compensation claim.

82.     UPS terminated Ms. Anderson's employment and subjected her to repeated acts of discrimination, retaliation, harassment, and intimidation because of the work related injury and her related workers' compensation claim.

83.     As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees, plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

i)   A permanent injunction be granted enjoining Defendant, its officers, directors, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and related law;

ii)   Defendant be ordered to institute and implement, and individual members of Defendant attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities for persons with present, past, or perceived disabilities;

iii)  Defendant be ordered to make Plaintiff whole by providing appropriate back and front pay and benefits with prejudgment interest, in amounts to be proved at trial;

iv)  Defendant be ordered to remove and expunge, or cause to be removed or expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record(s) of employment;

v)  Plaintiff be awarded extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to the Federal Rules of Civil Procedure;

vi)   Plaintiff be awarded all restitutionary and/or remedial relief;

vii)  Plaintiff be awarded pre-judgment interest and post-judgment interest, as well as her reasonable attorneys' fees, expert witness fees and other costs; and,

viii)   Plaintiff be awarded such other legal and equitable relief as the Court deems appropriate and just.

<u>**PLAINTIFF'S DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

<u>**DESIGNATED PLACE OF TRIAL**</u>

Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.


Dated: October 8, 2009

Respectfully submitted,

LAW OFFICE OF FREDRICK D. DEAY, II

By: <u>s/Fredrick D. Deay, II</u>
Fredrick D. Deay, II   KS. Bar No. 15035
7575 W. 106th Street, No. 14
Overland Park, KS 66212
(913) 649-0687
fddpai2@hotmail.com  *email*

***Attorney for Plaintiff - Kelly Anderson***

19